UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JARED ANTHONY WINTERER, a.k.a. Jared Anthony Rose,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | NO: 1:17-CV-3072-RMP<br><br>ORDER DISMISSING ACTION |

By Order filed July 26, 2017, the Court advised Plaintiff of the deficiencies of his complaint and directed him to amend or voluntarily dismiss, ECF No. 31. Since that time, Plaintiff has submitted several letters, ECF Nos. 33, 35, 38, and 39, proposed orders seeking previously denied injunctive relief, ECF Nos. 36 and 37, and a First Amended Complaint, consisting of 53 pages, which was received on August 16, 2017, ECF No. 34.

Plaintiff, a pretrial detainee at the Kittitas County Jail, is proceeding *pro se* and *in forma pauperis*. Defendants have not been served. Liberally construing the

ORDER DISMISSING ACTION ~ 1

First Amended Complaint in the light most favorable to Plaintiff, the Court finds it fails to cure the deficiencies of the initial complaint.

## UNITED STATES AS DEFENDANT

Plaintiff contends that in 2004 he did not receive an appropriate screening examination after he suffered acute head trauma, a broken neck, and remained in a coma for 53 days. ECF No. 34 at 6. According to Plaintiff, upon his return to "Yakima Regional's rehabilitation unit" after waking from the coma, "a brain pituitary MRI should have been completed to properly medicate [him] with neurotransmitter and hormone replacement therapy." *Id.* at 6-7. He believes his subsequent criminal behavior stems from the head trauma and he blames the United States.

As previously advised, the United States is not a proper defendant to a complaint brought pursuant to 42 U.S.C. § 1983. *Davis v. United States Dep't of Justice*, 204 F.3d 723, 726 (7th Cir. 2000); *Arnsberg v. United States*, 757 F.2d 971, 980 (9th Cir. 1985). Furthermore, liability under 42 U.S.C. § 1983 arises only upon a showing of personal participation by the defendant. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). To the extent Plaintiff is attempting to hold the United States responsible for actions taken by unidentified "government employees," he may not do so. There is no respondeat superior liability under 42 U.S.C. § 1983, meaning that an employer will not be responsible for the acts of its employees merely because of the employer-employee relationship. *Id.*

# EMTALA

Plaintiff claims violations of the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd. "Congress enacted the EMTALA not to improve the overall standard of medical care, but to ensure that hospitals do not refuse essential emergency care because of a patient's inability to pay." *Eberhardt v. City of Los Angeles,* 62 F.3d 1253, 1258 (9th Cir. 1995)

Here, Plaintiff does not allege that he was denied care at the Emergency Department of the Yakima Regional Medical and Cardiac Center following his motor vehicle accident in 2004. Indeed, he indicates that he received emergency care and was then transferred to a nursing home while he remained in a coma for 53 days. ECF No. 34 at 6. Contrary to Plaintiff's assertions, there are no "rehabilitated EMTALA requirements." *Id.*

Plaintiff indicates that he was also a patient at a children's hospital in 2005, where he claims "untrained government employees began trying to rehabilitate [him]," but failed to provide a brain pituitary MRI. *Id* at 8. He also states he was a patient at the Kittitas Valley Hospital in 2004 and 2005. *Id.* at 40. He complains that the failure to properly train the doctors who treated him was "cruel and unusual punishment," in violation of the Eighth Amendment. *Id.* at 8. His allegations do not state a violation of the EMTALA. They also fail to state a claim upon which relief may be granted under 42 U.S.C. § 1983. Medical negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment.

ORDER DISMISSING ACTION ~ 3

*See Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) ("Mere medical malpractice does not constitute cruel and unusual punishment.") (citation omitted). In addition, as previously advised, these claims would be time-barred. *See RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th Cir. 2002).

Plaintiff asserts that the statute of limitations "doesn't have effect while [he's] being imprisoned," ECF No. 32 at 30. This would be true only for that portion of time when Plaintiff was "imprisoned on a criminal charge prior to sentencing." *See* RCW 4.16.190(1), amended 2006. For the time that Plaintiff was in the community or serving a criminal sentence (i.e., in DOC custody following an Alford Plea on February 2, 2015) the statute of limitations did not toll. Only pre-trial incarceration which did not overlap with any other sentence would toll the running of the statute of limitations.

Plaintiff has not clearly and concisely set forth his various incarcerations so that the Court could discern when he was being held at a county jail facility pursuant to a sentence, when he was held prior to the imposition of a sentence, or when any of these times may have overlapped. Clearly, however, any allegations regarding his medical treatment in 2004 and 2005 would be time-barred.

## COUNTY DEFENDANTS

Plaintiff adds King County, Kittitas County, and Yakima County as Defendants in the caption of the First Amended Complaint. He does not list them as Defendants in the body of this document. *See* ECF No. 34 at 3–4. He claims

ORDER DISMISSING ACTION ~ 4

that he was a patient in certain hospitals and clinics in these counties. *Id.* at 44. He also complains that the courts where he has been prosecuted and the jail where he has been incarcerated are located in Kittitas County. ECF No. 34 at 43–44. These allegations do not state a claim upon which relief may be granted.

A county cannot be held liable under section 1983 for its employees' acts unless Plaintiff can prove the existence of unconstitutional policies, regulations, or ordinances, promulgated by officials with final policymaking authority. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988); *Monell v. Dept. of Social Services*, 436 U.S. 658, 690 (1978). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under section 1983." *Monell*, 436 U.S. at 694. While a single decision may satisfy the "policy" requirement, that decision must have been properly made by one of the municipality's authorized decision makers--by an official who "possesses final authority to establish municipal policy with respect to the [challenged] action." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 47981 (1986).

Plaintiff states that he has been a patient in hospitals in various cities in Washington State, but he was not referred to an appropriate specialist, causing him to live with medically treatable dysfunctions (i.e., "forethought, impulse, planning and insight problems, unable to hear tone or feel stress, arousal, interest and

ORDER DISMISSING ACTION ~ 5

empathy, with low mental energy, weak and tense muscles, gain and balance problems, erectile dysfunction, low sperm production while sexually undeveloped"). ECF No. 34 at 6–7, 9. The Court cannot infer from these allegations that King, Kittitas, and/or Yakima Counties engaged in a pattern or practice that resulted in the deprivation of Plaintiff's constitutional rights.

To the extent that Plaintiff is complaining about his ability to obtain health care in the community, he has failed to state a claim upon which this Court may grant relief.

## JUDICIAL IMMUNITY

Plaintiff complains that various judicial officers have not been sympathetic to hearing him list his "muscle sexual and cognitive disorders." ECF No. 34 at 9, 10, 11, 12. Plaintiff complains that on September 17, 2014, a Kittitas District Judge told Plaintiff to "shut up" and then held him in contempt when Plaintiff "continued to list [his] cognitive disorders that consequently compel [him] as a whitness [sic] against [himself]." *Id.* at 9. Plaintiff complains that another judge denied his various motions on January 11, 2017, after apparently interviewing jail medical staff regarding their unwillingness to refer Plaintiff to a specialist. *Id.* at 12–13. These allegations do not state a claim upon which relief may be granted under 42 U.S.C. §1983.

Judges are absolutely immune for all judicial acts performed within their subject matter jurisdiction when the plaintiff is seeking damages for a civil rights

violation.  *Stump v. Sparkman*, 435 U.S. 349, 356 (1978); *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986).  An act is "judicial" when it is a function normally performed by a judge and the parties dealt with the judge in his judicial capacity.  *Sparkman*, 435 U.S. at 362; *Crooks v. Maynard*, 913 F.2d 699, 700 (9th Cir. 1990).

Absolute immunity exists even when there are charges that the judge acted maliciously; it exists "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Bradley v. Fisher*, 80 U.S. 335, 347 (1871); *Pierson v. Ray,* 386 U.S. 547, 554 (1967)(a judge should not have to "fear that unsatisfied litigants may hound him with litigation charging malice or corruption.").  Plaintiff fails to state facts indicating any of the judges presiding over his state criminal proceedings acted in the "clear absence of all jurisdiction," when ordering his incarceration, denying his motions, or issuing orders. *Stump v. Sparkman*, 435 U.S. at 357.  Accordingly, Plaintiff's allegations against judicial officers are subject to dismissal.

If Plaintiff wishes to challenge the lawfulness of orders issued by state courts he must do so through the appropriate state appellate process.

## PRESENT CONFINEMENT

Plaintiff seems to be challenging the lawfulness of his present confinement.  ECF No. 34 at 14–18.  If a state prisoner challenges the fact or duration of his confinement, or seeks a determination that he is entitled to release or a shortening

of his period of confinement, his only federal remedy is a writ of habeas corpus, with its requirement of exhaustion of state remedies. *See Preiser v. Rodriguez*, 411 U.S. 475, 487–90 (1973); *Heck v. Humphrey*, 512 U.S. 477, 481 (1994). A § 1983 claim is not the appropriate vehicle for a prisoner to challenge his underlying state conviction and sentence by seeking injunctive relief. *Preiser v. Rodriguez*, 411 U.S. at 489 ("a state prisoner challenging his underlying conviction and sentence on federal constitutional grounds in a federal court is limited to habeas corpus ... he cannot bring a § 1983 action, even though the literal terms of § 1983 might seem to cover such a challenge").

Plaintiff also seems to be challenging a 2014 conviction for Fourth Degree Assault. ECF No. 34 at 18. Plaintiff alleges that he pleaded guilty to this offense to end the conditions of his confinement at the Kittitas County Corrections Center ("KCCC"). He does not allege that this conviction has been invalidated.

Plaintiff also challenges a 2009 conviction for communicating with a minor for immoral purposes under an "unconfirmed alias," as well as other convictions. He does not allege that any of these convictions has been invalidated. Therefore, Plaintiff would be precluded from seeking monetary damages.

To recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive

ORDER DISMISSING ACTION ~ 8

order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. *Heck*, 512 U.S. at 487. A claim for damages based on a conviction or sentence that has not been so invalidated is not cognizable under § 1983. *Id.*

When a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. *Id.* A judgment in favor of Plaintiff here would imply the invalidity of state criminal proceedings which have not already been invalidated; therefore, the instant allegations fail to state a cognizable claim under Section 1983.

## TREATMENT AT KCCC

Plaintiff states that he was ordered to the KCCC on February 24, 2014. He claims he was not provided health care at the facility. ECF No. 34 at 21. Nevertheless, he indicates that unidentified medical staff remarked about his behavioral problems and impaired balance on March 3, 2014. *Id.* at 22. He claims that he should have been referred to a specialist in neurology. *Id.*

Plaintiff states that he had seen an "outside neurologist" in December 2013, who had ordered a brain pituitary MRI. ECF No. 34 at 22. He complains that unspecified medical staff at the KCCC ignored his request for a brain pituitary

ORDER DISMISSING ACTION ~ 9

MRI and did not refer him to a specialist. ECF No. 34 at 22. He then asserts unidentified KCCC medical staff opined that imaging was not urgent. *Id.*

Plaintiff further complains that he was not prescribed Ritalin or referred to a specialist, although an outside neuropsychologist had allegedly made a recommendation for this drug. ECF No. 34 at 22. Plaintiff complains that unidentified medical staff are "ignorant," and see his "symptoms secondary to TBI (i.e., Traumatic Brain Injury) as 'chronic' but refuse to treat them or diagnose." *Id.*

Despite his assertion that he was not provided health care, Plaintiff states that he was seen by medical staff for drainage of an abscessed tooth and moderate to severe cavities in his mouth in March 2014. ECF No. 34 at 22. Plaintiff avers that he cannot feel pain and did not complain about oral problems, but he believes the medical staff should have referred him to a dentist. *Id.*

A prisoner seeking to impose Eighth Amendment liability for deliberate indifference must demonstrate three elements: (1) a "serious medical need," such that "failure to treat [the] condition could result in further significant injury or the unnecessary and wanton infliction of pain," *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir.2006) (internal quotation marks omitted); (2) Defendant was "aware of" that serious medical need, *see Farmer v. Brennan,* 511 U.S. 825, 837 (1994); and (3) Defendant disregarded the risk that need posed, *see id.* at 846, such as by denying or delaying care, *see Snow v. McDaniel*, 681 F.3d 978, 986 (9th Cir. 2012) *overruled in part by Peralta v. Dillard,* 744 F.3d 1076, 1083 (9th Cir. 2014) *(en*

ORDER DISMISSING ACTION ~ 10

*banc*) (holding monetary damages are unavailable against an official capacity defendant who lacks authority over budgeting decisions). Although Plaintiff alleges "they" ignored his oral problems, he does not identify "they," name any of these persons as Defendants to this action, or present facts showing they were deliberately indifferent to his suffering.

Plaintiff admits that he was given medication for infections, which he apparently did not take. ECF No 34 at 23. These allegations do not show deliberate indifference. Plaintiff indicates that when he was transferred to prison on an unspecified date, his mouth was examined, x-rays were taken and multiple bottom teeth and all but five top teeth were extracted.

Plaintiff claims that he was denied testosterone injections for muscle tightness at the same appointment, presumably in March 2014. ECF No. 34 at 23. Elsewhere, Plaintiff alleges that an endocrinologist in Spokane had prescribed Testosterone Cypionate from 2010 to 2013. *Id.* at 28. He does not allege the prescription was valid in March 2014, or that testosterone injections continued to be prescribed as medically necessary based on a documented medical condition. Plaintiff claims to suffer from hypogonadism and believes he should have been referred to a specialist, *Id.* at 23, but he admits that a doctor saw no documented proof of this condition on June 30, 2014. *Id.* at 25.

Plaintiff asserts that at a sick call on June 30, 2014, he requested a consultation with a neurologist to "balance [his] hormones and neurotransmitters

ORDER DISMISSING ACTION ~ 11

because [he] needed testosterone injections for muscle tightness, muscle mass, and erectile dysfunction," for the significant TBI he had sustained in 2004. ECF No. 34 at 24. Plaintiff claims unidentified KCCC medical staff ignored his request which he believes is "cruel and unusual." *Id.* Plaintiff asserts that it would have been appropriate to refer him to an endocrinologist. *Id.*

Plaintiff asserts the sick call doctor on June 30, 2014, decided testosterone replacement therapy and the neurology consultation were not necessary. ECF No. 34 at 25. Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

Plaintiff contends that he was compelled to accept an Alford plea in January 2015, due to the conditions at the KCCC. He claims that he was housed in a special cell designed for punishment. ECF No. 34 at 20. He claims he did not have "access to running water to wash or drink, correspondence or writing supplies even for criminal defense, hygiene products, or hand sanitizer, counsel, telephone, toilet, recreation, and visits from family or friends." *Id.* Plaintiff states that he was housed in these conditions for five months. *Id.* He does not state by whom.

Plaintiff admits that he was housed in this cell due to an accumulation of minor infractions and his actions, which were allegedly "misperceived as attempted custodial assault." ECF No. 34 at 20. Although Plaintiff contends that

ORDER DISMISSING ACTION ~ 12

his rights were violated between July 5 and 12, 2014, between July 15 and 29, 2014, between September 25, 2014, and November 24, 2014, and between December 1, 2014, and February 3, 2015, he does not state how or by whom.

Plaintiff claims he was taken to shower once a week, taken to an attorney booth for legal visits but could not request them, and taken to court dates. Plaintiff complains that unspecified persons would not allow Plaintiff to call his attorney, as ordered by a judge, on December 18, 2014. Plaintiff does not state what harm resulted. As presented, these allegations are insufficient to state a constitutional violation.

Plaintiff avers that on January 16, 2015, an officer remarked that Plaintiff's bad hygiene was "obvious" and "self-inflicted. ECF No. 34 at 26. Plaintiff contends that because he was unable to wash his hands, he wiped feces on the wall. *Id.* Plaintiff indicates that he had experienced improved health following a high dose injection of Depo Testosterone in December 2013 and he wished to maintain this by seeking a "prescription refill" in January 2015. *Id.* Plaintiff presents no facts indicating the prescription was still viable more than a year after he had last received it prior to incarceration. In any event, the failure to follow prison policy does not establish a constitutional violation. *See Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009).

Plaintiff states that he was returned to the KCCC on March 21, 2016, following his DOC sentence, for allegedly violating a no contact order and for

ORDER DISMISSING ACTION ~ 13

unlawful harassment. ECF No. 34 at 15. He seems to indicate his incarceration will continue through December 15, 2017. *Id.* at 17.

Plaintiff claims that he was subjected to cruel and unusual punishment by unspecified KCCC medical staff on March 30, 2016, because they ignored his alleged need for testosterone. ECF No. 34 at 27. Plaintiff complains that his request for testosterone injections for gait problems was denied again on April 6, 2016. ECF No. 34 at 28. Plaintiff made an additional request on June 28, 2016, *Id.* at 30. Plaintiff does not allege that the DOC had provided him with testosterone injections during the preceding year. Again, differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *See Sanchez v. Vild*, 891 F.2d at 242.

Plaintiff complains that a doctor would not see him when he requested a doctor visit on June 13, 2016, due to muscle weakness and an inability to work out in his cell. ECF No. 34 at 29. Plaintiff contends unidentified medical staff are "cruel and unusual" because they linked this request to Plaintiff's prior request for testosterone injections. *Id.* These bald assertions do not state a constitutional violation.

Plaintiff states that he sought a testosterone level check on June 29, 2016, due to concerns of muscle weakness and low hormone levels, but was ignored. ECF No. 34 at 31. Plaintiff contends that he has not been able to walk properly

ORDER DISMISSING ACTION ~ 14

since 2004 due to muscle weakness. *Id.* He claims that unidentified medical staff should have referred him to a urologist, endocrinologist or neurologist, but they consider keeping a record of his complaints to be adequate. *Id.* Plaintiff's assertion that "specific treatment of my cognitive muscle and sexual dysfunctions is mandatory no matter the cost," ECF No. 34 at 32, is unfounded.

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (*citing Estelle v. Gamble*, 429 U.S. 97, 103–104 (1976)).

> A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain . . . . The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a serious need for medical treatment.

*McGuckin v. Smith,* 974 F.2d 1050, 1059–60 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

To demonstrate deliberate indifference, a prisoner must allege facts sufficient to indicate a culpable state of mind on the part of prison officials. *Wilson v. Seiter*, 501 U.S. 297 (1991). Deliberate indifference exists when an official knows of and disregards a serious medical condition and the official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837.

ORDER DISMISSING ACTION ~ 15

Plaintiff does not present facts from which the Court could infer that he was suffering chronic and substantial pain to which identified Defendants are deliberately indifferent.

Plaintiff indicates that his testosterone level was checked on November 23, 2016, ECF No. 34 at 36, although he claims the results were misinterpreted. He contends a specialist "would have seen things [his] way." *Id.* at 37. A showing of medical malpractice or negligence, however, is insufficient to establish a constitutional deprivation under the Eighth Amendment." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004)

Plaintiff states that he contacted unidentified members of the mental health staff on June 30, 2016, but they would not treat his mood disorder. ECF No. 34 at 32. Plaintiff complains that he was segregated due to behavior problems. *Id.* Plaintiff states that he has a "probable frontal lobe injury" which has not been confirmed. Plaintiff contends that he needs treatment for ADHD with Ritalin, Adderal or Methylpheridate, but there allegedly is a rule at the KCCC "against prescribing ADHD medicine." ECF No. 34 at 32. Plaintiff does not allege that he has been medically diagnosed with ADHD, nor that identified Defendants at the KCCC have failed to honor a current prescription. His allegations are insufficient to state a constitutional violation.

Plaintiff claims that he was not provided adequate treatment for a suspected heart lesion on July 26, 2016. ECF No. 34 at 33. He also contends that he may

ORDER DISMISSING ACTION ~ 16

have had throat cancer which was causing acid reflux problems, but he was prescribed Zantac without further investigation. *Id.* He avers this same condition was investigated during his confinement at the DOC with a chest x-ray, EKG and blood test. *Id.* Plaintiff makes no allegation that a heart lesion or throat cancer was diagnosed. The possibility that the DOC shared lab results with the KCCC which were then used to deny Plaintiff the relief he requested does not state a constitutional claim. Plaintiff's allegations do not support an Eighth Amendment claim upon which relief may be granted.

Plaintiff states that he was evaluated by a psychologist for "diminished capacity" on July 26, 2017. ECF No. 34 at 21. He claims this person stated, "Oh you don't want that. It'll slow ya down," when Plaintiff advised him that he had been prescribed Resporidone. *Id.* at 33. Plaintiff states that he stopped taking the medication after about 3 pills because it had negative effects on his libido and his ability to walk. *Id.* Plaintiff's bald assertions that these events are cruel and unusual punishment are unsupported by the facts provided.

As previously advised, a County cannot be held liable under § 1983 for its employees' acts unless Plaintiff can prove the existence of unconstitutional policies, regulations, or ordinances, promulgated by officials with final policymaking authority. *City of St. Louis v. Praprotnik*, 485 U.S. 121; *Monell*, 436

U.S. at 690. Plaintiff's allegations are insufficient to state a claim for County liability.

**CONFINEMENT AT THE WASHINGTON STATE PENITENTIARY**

Plaintiff asserts that he was "enduring more cruel and unusual punishments in 2015" while imprisoned at the Washington State Penitentiary ("WSP"). To establish an Eighth Amendment violation in a conditions of confinement or inadequate medical care case, the inmate must show that the prison official acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 835. Deliberate indifference exists when the prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id*. at 842.

Under the Eighth Amendment, the pertinent inquiry is: (1) whether the alleged violation constitutes an infliction of pain or a deprivation of basic human needs, such as adequate food, clothing, shelter, sanitation, and medical care; and (2) if so, whether prison officials acted with the requisite culpable intent such that the infliction of pain is "unnecessary and wanton." *Farmer,* 511 U.S. at 834.

Prison officials display the requisite culpable intent when they act with deliberate indifference to the inmates' suffering. *Id.*; *Wilson*, 501 U.S. at 302–03; *Jordan v. Gardner*, 986 F.2d 1521, 1528 (9th Cir. 1993) (en banc). The test for whether a prison official acts with deliberate indifference is a subjective one: the official must "know[] of and disregard[] an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could

be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Here, Plaintiff has failed to support his conclusory assertions with any facts. He does not state who subjected him to cruel and unusual punishment, name those persons as Defendants to this action, state when any of those actions occurred or present any facts from which the Court could infer that he was actually subjected to cruel and unusual punishments.

Plaintiff represents that he was in DOC custody for 404 days following an Alford Plea on February 2, 2015. ECF No. 34 at 13–14. He indicates that he was subjected to humiliation when other inmates made fun of his genitalia. *Id.* at 14. He does not allege that he filed a PREA complaint or that correctional officers knowingly failed to protect him from assault by other inmates. Plaintiff complains other inmates called him a retard and that he cried and unsuccessfully tried to commit suicide while at the WSP. *Id.* at 14.

Insufficient protection of a prisoner resulting in harm inflicted by other inmates may violate a prisoner's constitutional rights. *See White v. Roper*, 901 F.2d 1501, 1403–04 (9th Cir. 1990). When a prisoner is claiming that he has not been afforded adequate protection against violent acts by other inmates, the prisoner must show that the prison officials' acts were deliberately indifferent to the prisoner's vulnerability. *Wilson v. Seiter*, 501 U.S. 294; *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1443 (9th Cir. 1991), *abrogated in part on other grounds,*

*Farmer*, 511 U.S. 825. Plaintiff has presented no facts from which the Court could infer an Eighth Amendment violation.

Although granted the opportunity to do so, Plaintiff has failed to amend his complaint to state a claim upon which relief may be granted. Therefore, **IT IS ORDERED** that this action is **DISMISSED** for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1), but without prejudice to seeking appropriate state court remedies regarding challenges to Plaintiff's convictions. Based on this Court's understanding of *Washington v. Los Angeles Cty. Sheriff's Dep't,* 833 F.3d 1048 (9th Cir. 2016), this dismissal will **NOT** count as a "strike" pursuant to 28 U.S.C. § 1915(g). To the extent that Plaintiff wishes to be relieved of his duty to register as a sex offender, he should pursue those remedies that are available in state court.

**IT IS SO ORDERED.** The District Court Clerk is directed to enter this Order, enter judgment, forward a copy to Plaintiff and close the file. The Court certifies that any appeal of this dismissal would not be taken in good faith.

**DATED** December 1, 2017.

                                          *s/ Rosanna Malouf Peterson*
                                          ROSANNA MALOUF PETERSON
                                            United States District Judge